**The below described is SIGNED.**

**Dated: January 14, 2014**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 10-31252 |
| **KENNETH R. ANDERSON,** | |
| Debtor. | Chapter 7 |
| **DAVID C. WEST, as Chapter 7 Trustee,** | Adversary Proceeding No. 12-2348 |
| Plaintiff, | |
| vs. | Judge William T. Thurman |
| **DWENDON M. LEE, as Trustee of the Dwendon M. Lee and Annette A. Lee Family Trust; ANNETTE A. LEE, as Trustee of the Dwendon M. Lee and Annette A. Lee Family Trust; JOHN J. LOWNEY, as Trustee of the Lowney Family Trust; and BEATRICE M. LOWNEY, as Trustee of the Lowney Family Trust,** | |
| Defendants. | |

**MEMORANDUM DECISION**

This case involves an analysis of Utah water law. Here, the Chapter 7 Trustee asserts claims to certain interests in water as do creditors the Dwendon M. Lee and Annette A. Lee Family Trust and the Lowney Family Trust (collectively, the "Lee and Lowney Trusts"). Without making a determination of the value of these interests in water, the Court perceives, through the pleadings and argument, that the interests in water have significant value. The Court is called upon to interpret legislation and case law and the acts of Kenneth R. Anderson (the "Debtor") in determining who has the better argument.

During the course of the last quarter-century,  the Utah Court of Appeals, the Utah Supreme Court, and the Utah Legislature have issued either decisions or legislation rendering some law relating to interests in water a bit murky. This Court must determine the effect of legislative amendments on the proper method to perfect a security interest in water shares under Utah law, an issue of first impression for this Court. Complicating the issues in this case is the fact that the Debtor attempted some estate planning in the creation of a trust. Accordingly, a review of the intent of the Debtor as settlor is required.

The matters now before the Court are the Plaintiff's and Defendants' cross motions for summary judgment. The central dispute between the parties is whether 30.92 shares in the Hurricane Canal Company and 8 share equivalents under a water delivery contract issued by the City of LaVerkin, located in southern Utah, on March 19, 2007 (the "Water Shares and Contracts") belong to the Debtor's bankruptcy estate or whether the Defendants have a security interest in the Water Shares and Contracts that supercedes that of the Chapter 7 Trustee under 11 U.S.C. § 544(a). To resolve this dispute, the Court must determine whether the Debtor transferred—or was required to transfer—the Water Shares and Contracts to a trust and, if so, whether the Defendants properly perfected their security  interests in the Water Shares and Contracts.

The Court conducted a hearing on the cross motions, at which hearing Patrick E. Johnson appeared on behalf of David C. West, the Chapter 7 Trustee and Plaintiff, and Chris L. Schmutz appeared on behalf of the Defendants, the Lee and Lowney Trusts. The Court then took the matter under advisement. After carefully considering the parties' briefs and memoranda, statutory authority, and case law, and after conducting its own independent research of the applicable law, the Court hereby issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

## I.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(b) and 157. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(K). Venue is appropriate under 28 U.S.C. § 1409, and notice of the hearing on the motions for summary judgment was properly given in all respects.

## II.    BACKGROUND AND FINDINGS OF FACT

The Debtor created the Roderick Family Trust (the "Trust") on January 30, 2007. He funded the Trust with two bank accounts and real property located in California and real property located at 825 N. 800 E., Hurricane, UT 84737. In particular, the Debtor quitclaimed various parcels of land constituting the Pah Tempe Hot Springs to the Trust on December 6, 2007, and the deeds evidencing those transfers were recorded with the Washington County Recorder the following day on December 7, 2007.[1]

---

[1] *See* Docket No. 19, Plaintiff's Motion for Summary Judgment, Ex. B. All subsequent references to docket numbers shall be to the above captioned adversary proceeding unless otherwise noted.

3

The following year, the Debtor borrowed money from the Lee and Lowney Trusts. In his capacity as Trustee of the Trust and in his individual capacity as guarantor, the Debtor executed three promissory notes dated February 5, 2008, March 6, 2008, and May 6, 2008.[2] The first two notes were made in the amount of $300,000 apiece, while the third note was made in the amount of $404,000, for a total indebtedness of $1,004,000.[3]

Each of the promissory notes was secured by a deed of trust of even date. The copies of the trust deeds dated February 5 and March 6, 2008 show that they were recorded with the Washington County Recorder, but the copy of the trust deed dated May 6, 2008 does not have a stamp from a recorder's office. The trust deeds purport to offer as security for the loans certain parcels of land constituting the Pah Tempe Hot Springs as well as "30.92 Shares in the Hurricane Canal Company" and "Eight (8) Share Equivalents under that certain Water Delivery Contract issued by the City of LaVerkin, Utah, dated March 19, 2007."[4]

On February 5, 2008, the Lee and Lowney Trusts and the Debtor[5] executed a Memorandum of Understanding and Agreement, which provided, *inter alia*, that "[t]he following water rights and/or shares are to be included on the Trust Deed as part of the secured property: 30.72 shares in the Hurricane Canal Company; and 8 Share Equivalents under that certain Water Delivery Contract

---

[2] Docket No. 430 in Case No. 10-31252, Declaration of John Lowney. The Lee and Lowney Trusts were lenders on the first two promissory notes, but only the Dwendon M. Lee and Annette A. Lee Family Trust was a lender on the third.

[3] *Id.*

[4] *Id.*

[5] The Debtor signed the Memorandum of Understanding and Agreement in his capacity as Trustee of the Trust and in his individual capacity, but the document itself states that it is between the Lee and Lowney Trusts on the one hand and the Debtor, in his capacity as Trustee of the Trust, on the other.

issued by the City of LaVerkin, Utah, dated March 19, 2007."[6] The Court is not aware of an explanation for the fractional difference in Hurricane Canal Company shares between the trust deeds and the Memorandum of Understanding and Agreement. The Defendants argue that the Memorandum of Understanding and Agreement, although executed at the time of the first loan, applied to each of the three loans at issue in this case.[7]

In connection with the loans, the Lee and Lowney Trusts and the Debtor—again in his capacity as Trustee of the Trust and in his individual capacity—executed three Title Company Instructions,[8] each of which authorized Southern Utah Title Company:

> [T]o prepare a Trust Deed and Trust Deed Note with the following terms:
>
> . . . .
>
> . . . The Trustor and Beneficiaries hereby request that the following water rights and/or shares be included on the Trust Deed as part of the secured property:
> 30.72 shares in the Hurricane Canal Company; and 8 Share Equivalents under that certain Water Delivery Contract issued by the City of LaVerkin, Utah, dated March 19, 2007.
> The undersigned Trustor and Beneficiaries understand and acknowledge that the water rights and/or shares are being included at their request, and that Southern Utah Title Company makes absolutely no representation as to the quantity, quality nor the adequacy of the water rights/shares, and the water rights/shares will not be insured by SUTICO in any manner whatsoever.[9]

A few months later, the Debtor became delinquent on the promissory notes, and on October 28, 2008, the parties executed a Trust Deed Note Modification Agreement for each of the three

---

[6] Docket No. 17, Declaration of John Lowney, at 4–5.

[7] Docket No. 16, Memorandum in Support of Defendants' Motion for Summary Judgment, at 2.

[8] Because the Lowney Family Trust was not a lender on the third loan, its representatives did not sign the third Title Company Instructions document.

[9] Docket No. 17, Declaration of John Lowney, at 6, 10, and 14.

5

notes, which changed some of the notes' repayment terms.[10] In particular, the notes all became due in full on November 1, 2009.[11] When the notes were not paid by that date, the Lee and Lowney Trusts began to foreclose on the trust deeds and scheduled a trustee's sale for June 11, 2010.[12] The Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of California on June 10, 2010.

On August 13, 2010, Judge Thomas C. Holman, who had been presiding over the Debtor's case in the Eastern District of California, ordered that the Debtor's bankruptcy case and all related adversary proceedings be transferred to the United States Bankruptcy Court for the District of Utah.[13] The Defendants subsequently filed a motion to convert or dismiss the Debtor's case, in which two other parties joined. The Court conducted a hearing on the motion on August 25, 2011, and converted the Debtor's case to one under Chapter 7, entering an order to that effect on September 2, 2011.[14] David West was subsequently appointed as Chapter 7 Trustee, who filed the instant adversary proceeding on August 29, 2012, seeking to have the Water Shares and Contracts declared property of the estate.

---

[10] Docket No. 430 in Case No. 10-31252, Declaration of John Lowney, at 2–3 and 34–36.

[11] *Id*.

[12] *Id*. at 3.

[13] Docket No. 1 in Case No. 10-31252, Civil Minute Order Transferring Case.

[14] Docket No. 154 in Case No. 10-31252, Order Converting Case to Chapter 7.

## III.   DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[16] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[17] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[18]

The moving party bears the burden to show that it is entitled to summary judgment,[19] including the burden to properly support its summary judgment motion as required by Rule 56(c).[20] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[21] The nonmoving party may not rely solely on allegations in the pleadings, but must instead show "specific facts showing that there is a genuine issue for trial."[22]

---

[15] FED. R. CIV. P. 56(a).
[16] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
[17] *Id.*
[18] *Id.* at 249.
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[20] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[21] *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[22] *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party,[23] but the Court does not weigh the evidence or make credibility determinations.[24]

*B. Were the Water Shares and Contracts Conveyed to the Trust?*

The Plaintiff argues that the Debtor never transferred the Water Shares and Contracts to the Trust. Therefore, the Trust could not offer them as security for the loans made by the Lee and Lowney Trusts. The Defendants admit that the Water Shares and Contracts were not formally transferred to the Trust, but argue that this fact is without legal significance for three reasons. First, the Defendants assert that the Debtor individually pledged the Water Shares and Contracts to the Lee and Lowney Trusts as collateral for the loans.  Second, the Defendants argue that the Debtor did not have to transfer the Water Shares and Contracts to the Trust because the Trust is revocable, and assets of a revocable trust are treated as the assets of the trustor. Third, the Defendants argue that the Water Shares and Contracts could have been transferred to the Trust as an appurtenance to the Pah Tempe property.

The Court will first address the Defendants' argument that the Debtor pledged the Water Shares and Contracts in his individual capacity. The three trust deeds are the starting point for determining what property was offered as collateral for the loans. Those deeds show that the Debtor, in his capacity as Trustee of the Trust, offered as collateral parcels of the Pah Tempe property along with the Water Shares and Contracts. The Debtor signed the trust deeds in his capacity as Trustee of the Trust, however, not in his individual capacity. Therefore, the trust deeds do not support the argument that the Debtor pledged the Water Shares and Contracts in his individual capacity.

---

[23] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).
[24] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is also necessary to examine the effect of the Memorandum of Understanding and Agreement and the Title Company Instructions, which were executed in connection with the loans. As mentioned above, the Memorandum of Understanding and Agreement states that it is between the Debtor, in his capacity as Trustee of the Trust, and the Lee and Lowney Trusts. In pertinent part, it provides that the Debtor will guarantee the loan in his individual capacity and that the Water Shares and Contracts "are to be included on the Trust Deed as part of the secured property."[25] The document was signed by the Lee and Lowney Trusts and the Debtor in his individual capacity and his capacity as Trustee of the Trust.

The three Title Company Instructions are very similar to the Memorandum of Understanding and Agreement. The former documents define the Debtor—in his capacity as Trustee of the Trust—as Trustor, and define the Lee and Lowney Trusts as Beneficiaries. Each of the Title Company Instructions provides that the Debtor will individually guarantee the loan associated with it, and also states that the "Trustor and Beneficiaries hereby request that [the Water Shares and Contracts] be included on the Trust Deed as part of the secured property."[26] Each of the Title Company Instructions was signed by the Lee and Lowney Trusts and by the Debtor—both in his individual capacity and in his capacity as Trustee of the Trust.[27]

The Court finds that the Debtor did not individually pledge the Water Shares and Contracts through the Memorandum of Understanding and Agreement or the Title Company Instructions. Consonant with the trust deeds, the Memorandum of Understanding and Agreement and the Title Company Instructions were between the Lee and Lowney Trusts and the Debtor in his capacity as

---

[25] Docket No. 17, Declaration of John Lowney, at 4–5.

[26] *Id*. at 6, 10, and 14.

[27] *Id*. at 9, 13, and 17. The third Title Company Instructions document was only signed by the Lee Trust because the Lowney Trust was not a lender on the third loan.

Trustee of the Trust. The Court concludes that the Debtor signed the Memorandum of Understanding and Agreement and the Title Company Instructions to confirm the condition that he would be individually liable on the loans, not to pledge the Water Shares and Contracts in his individual capacity.

The Court will next address the Defendants' argument concerning the nature of the Trust. The Defendants argue that the Debtor did not have to transfer the Water Shares and Contracts to the Trust in order to offer them as security for the loans made by the Lee and Lowney Trusts because the Trust is revocable, and therefore not a separate legal entity, leaving no legal distinction between assets held by the Debtor and assets held by the Trust. In turn, the Defendants assert, when the Debtor executed the notes and trust deeds in his capacity as Trustee of the Trust, he could offer as collateral any assets that he held individually and did offer the Water Shares and Contracts.

The Defendants buttress their argument with case law from other jurisdictions. In *Mickam v. Joseph Louis Palace Trust*, the court considered the argument that tax liens did not attach to property previously transferred to a revocable trust and determined that, under Michigan law, "a revocable trust is not a separate legal entity with regard to the rights of creditors."[28] Defendant also cites *Carolina Casualty Insurance Co. v. L.M. Ross Law Group, LLP* for the proposition that California law does not distinguish "between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor."[29] While this statement appears to support the Defendants' position by effacing all boundaries between trust property and the settlor's property, its scope is arguably constrained and clarified by other principles

---

[28] *Mickam v. Joseph Louis Palace Trust*, 849 F. Supp. 516, 522–23 (E.D. Mich. 1993).
[29] *Carolina Cas. Ins. Co. v. L.M. Ross Law Group, LLP*, 108 Cal. Rptr. 3d 701, 710 (Cal. Ct. App. 2010) (citation omitted).

of California trust law. A settlor and lifetime beneficiary of a revocable inter vivos trust "has the equivalent of full ownership of the property," and property held in such a trust is "reachable by the creditors of the settlor."[30] This suggests that a settlor may not use a revocable trust to place assets out of the reach of creditors, not that a settlor may offer property not placed in trust as collateral. Last, the Defendants cite *Kesling v. Kesling*, where the court considered whether a settlor, trustee, and beneficiary of a revocable trust was a shareholder of certain shares that were held in the trust.[31] In holding that the settlor was a shareholder, the court noted that under Indiana law creditors could reach assets held in the trust.[32]

These cases stand for the general proposition that assets of a revocable trust may be treated as belonging to the settlor. But the Court is not convinced that the opposite is true. If a person establishes a revocable trust, that does not mean that the person's assets become part of the trust. Importantly, if the opposite were true, it would contravene Utah trust law, which states in pertinent part that a trust may be created by a "declaration by the owner of property that the owner holds identifiable property as trustee."[33] Here, the agreement establishing the Trust does not specifically name the Water Shares and Contracts as assets that will be conveyed to the Trust, and the Defendants have admitted that the Water Shares and Contracts were not formally transferred to the Trust. Therefore, the Court concludes that while a settlor of a revocable trust may be deemed the owner of property held in the trust, property is not considered part of the trust unless the settlor identifies the property and conveys it to the trust.

---

[30] *Zanelli v. McGrath*, 82 Cal. Rptr. 3d 835, 850 (Cal. Ct. App. 2008).
[31] *Kesling v. Kesling*, 967 N.E.2d 66 (Ind. Ct. App. 2012).
[32] *Id*. at 83–84.
[33] UTAH CODE ANN. § 75-7-401(1)(b) (2013). *See also In re West*, 948 P.2d 351, 353 (Utah 1997) ("[T]o create an inter vivos trust, . . . 'the trust property must be clearly specified and set aside . . . .'") (quoting *Sundquist v. Sundquist*, 639 P.2d 181, 183–84 (Utah 1981)).

The Court will last address the Defendants' argument that the Water Shares and Contracts were appurtenant to the land and therefore transferred to the Trust along with the land.[34] Whether the Water Shares and Contracts were appurtenant to the land is determined by Utah law,[35] which provides that "[t]he right to the use of water evidenced by shares of stock in a corporation is not a water right appurtenant to land."[36] This statute is not as absolute as it appears on its face, however. Utah courts have interpreted it to establish "a rebuttable presumption that the water right represented by shares of stock . . . does not automatically pass to a grantee as appurtenant to the land upon which the water is being used at the time of the grant."[37] The grantee of land can rebut the presumption by showing "clear and convincing evidence [1] that said water right was in fact appurtenant and [2] that the grantor intended to transfer the water right with the land, even though no express mention of any water right was made in the deed."[38]

Here, the Plaintiff argues that the Water Shares and Contracts are not appurtenant to the Pah Tempe property because the shares were acquired recently, the Water Shares and Contracts were appraised at $175,000, and the Debtor testified that the property is not arable and the water is therefore not used for farming, but only for watering trees.[39] Utah law examines several factors to determine whether a water right is in fact appurtenant to the land, including "whether the use of the

---

[34] Docket No. 24, Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 5 n.1.

[35] *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[36] UTAH CODE ANN. § 73-1-11(4)(a) (2013). *See also Liston v. Liston*, 269 P.3d 169, 176 (Utah Ct. App. 2011).

[37] *Sanpete Am., LLC v. Willardsen*, 269 P.3d 118, 126 (Utah 2011) (quoting *Abbott v. Christensen*, 660 P.2d 254, 256 (Utah 1983)).

[38] *Id*. (quoting *Brimm v. Cache Valley Banking Co.*, 269 P.2d 859, 864 (Utah 1954)).

[39] Docket No. 25, Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 7.

water right on the land greatly increased the land's value, such as irrigation water used upon farmlands, which would be 'valueless without water.'"[40] Other relevant factors include "the extent and length of use of the water right upon the land, with particular emphasis on periods that extended beyond the grantor's ownership."[41] If the water is used upon the land, that "is not by itself sufficient to rebut the presumption against appurtenance."[42] Utah cases have typically concluded that a water right is not appurtenant where the facts showed "that the water right was put to beneficial use upon other lands or that the water right was sporadically or insubstantially used on the land."[43]

The Court concludes that a rebuttable presumption arises that the Water Shares and Contracts were not appurtenant to the land and were therefore not transferred with the Pah Tempe property into the Trust. The Court also concludes, however, that there are genuine disputes concerning the first prong required to rebut that presumption. The Plaintiff has directed the Court's attention to the Hurricane Canal Company's stockholders' ledger, which could suggest that the water has not been used upon the Pah Tempe property for an extensive period of time. In addition, the Debtor's deposition testimony establishes that the property is not used for farming and has "never been classified as a farm."[44] Nevertheless, the deposition also suggests that the Debtor uses the water to maintain 6,000 trees, without which "the property would be worthless" in the Debtor's opinion because it "would be a desert."[45] Despite the appraisal provided by the Plaintiff, the Court believes there are genuine disputes of fact concerning the extent of the water's use on the Pah Tempe property

---

[40] *Sanpete*, 269 P.3d at 126–27 (quoting *In re Johnson's Estate*, 228 P. 748, 752 (Utah 1924)).

[41] *Id*. at 127 (citing *Abbott*, 660 P.2d at 257).

[42] *Id*. (citing *Hatch v. Adams*, 318 P.2d 633, 634 (Utah 1957), *aff'd on reh'g*, 329 P.2d 285 (Utah 1958)).

[43] *Id*. (citing *Roundy v. Coombs*, 668 P.2d 550, 552 (Utah 1983)).

[44] Docket No. 25, Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Ex. A.

[45] *Id*.

13

and whether the water greatly increases the property's value, which are sufficient to preclude entry of summary judgment on the issue of whether the Water Shares and Contracts were in fact appurtenant to the land. Moreover, rebutting the presumption on the second prong involves inquiring into the Debtor's intent, which is ill-suited for resolution on summary judgment.[46] The Court therefore determines that the issue regarding whether the Water Shares and Contracts were appurtenant to the Pah Tempe property must be decided by the trier of fact.

### C. Were the Water Shares and Contracts Properly Perfected?

The crux of the dispute between the parties is whether a security interest in water shares is properly perfected by inclusion in a recorded trust deed or by possession. This Court again must turn to Utah law to decide this question.[47] The law regarding water rights in Utah had long been that "the rights to the use of water reflect 'an interest in real property.'"[48] In 1989, however, the Utah Court of Appeals held that shares in an irrigation company were an "instrument" as defined by Article 9 of the Utah Uniform Commercial Code.[49] Therefore, perfection of a security interest in water shares was "accomplished by possession of the certificate evidencing the security."[50] The Utah Supreme Court overruled *Associates Financial* five years later, holding that "stock in a mutual irrigation corporation represents an interest in real property and is therefore not a certificated security under

---

[46] *See Mendenhall v. Koch Serv., Inc.*, Nos. 93-5072, 93-5073, 1994 WL 556893, at *3 (10th Cir. Oct. 12, 1994) ("[I]ssues of motive and intent are ill-suited for resolution on summary judgment."); *Larson v. Eney*, 741 F. Supp. 2d 459, 463 (S.D.N.Y. 2010) ("[S]ummary judgment is likely to be inappropriate where intent is at issue . . . .").

[47] *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[48] *Salt Lake City Corp. v. Cahoon & Maxfield Irrigation Co.*, 879 P.2d 248, 251 (Utah 1994) (quoting *In re Bear River Drainage Area*, 271 P.2d 846, 848 (Utah 1954)).

[49] *Assocs. Fin. Servs. Co. of Utah v. Sevy*, 776 P.2d 650, 652–53 (Utah Ct. App. 1989), *overruled by Cahoon*, 879 P.2d 248 (Utah 1994).

[50] *Id*. at 652.

14

section 70A-8-102(1)(a)."[51] The following year, the Utah Supreme Court considered whether the rule

of *Associates Financial* or *Cahoon* should govern a case involving water shares where the lower

courts entered their decisions before *Cahoon*.[52] While arguably dicta, the Utah Supreme Court stated,

in noting the effect of *Cahoon*, that "recording a trust deed is sufficient to perfect a security interest"

in water shares.[53]

The parties dispute, however, the effect of what happened next. In 1996, the Utah Legislature

passed House Bill 61 ("H.B. 61"), which amended § 73-1-10 and § 73-1-11 of the Utah Code

Annotated, and enacted § 70A-8-409.[54] In particular, the Legislature amended § 73-1-10 by adding

subsection 2, which provided: "The right to the use of water evidenced by shares of stock in a

corporation shall be transferred in accordance with the procedures applicable to securities set forth

in Title 70A, Chapter 8, Utah Uniform Commercial Code."[55] As added by H.B. 61, § 70A-8-409

provided: "The procedures of this chapter shall apply to shares of stock in a water company,

irrigation company, canal company, reservoir company, or other similar water corporation."[56]

The Plaintiff argues that these changes show that, after the enactment of H.B. 61, water

shares are perfected by possession of the shares. The Defendants argue that the Legislature did not

go that far when it enacted H.B. 61. According to the Defendants, H.B. 61 did not overrule *Cahoon*

or *Sevy*, and did not amend Article 9 to require possession of a water share certificate to perfect a

---

[51] *Cahoon*, 879 P.2d at 252.

[52] *Sevy v. Sec. Title Co. of Southern Utah*, 902 P.2d 629 (Utah 1995).

[53] *Id*. at 632.

[54] H.B. 61, 1996 Gen. Sess. (Utah 1996).

[55] *Id*. The present version of that subsection is nearly identical: "The right to the use of water evidenced by shares of stock in a corporation shall be transferred in accordance with the procedures applicable to securities set forth in Title 70A, Chapter 8, Uniform Commercial Code - Investment Securities." UTAH CODE ANN. § 73-1-10(2) (2013).

[56] *Id*. That section's present language is similar: "The procedures of this chapter apply to shares of stock in a land company or a water company." UTAH CODE ANN. § 70A-8-409 (2013).

security interest therein.[57] Instead, H.B. 61 only provided that a transfer of water shares must be in compliance with Article 8, which does not prescribe procedures for perfection of security interests in water shares.[58]

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."[59] If the highest state court has not yet issued a decision on the issue in question, "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."[60] "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[61]

Shortly after H.B. 61 became effective, the Utah Supreme Court issued its decision in *Badger v. Brooklyn Canal Co.*, where it repeated, without reference to H.B. 61, *Cahoon*'s holding that stock in a mutual water corporation did not constitute a certificated security under § 70A-8-102(1)(a).[62] But *Badger* did not address the precise issue in this case, and the Court has not found a post-*Cahoon* case from the Utah Supreme Court that has dealt directly with the effect of H.B. 61 on the proper method to perfect a security interest in water shares. Therefore, the Court must attempt to predict

---

[57] Docket No. 16, Memorandum in Support of Defendants' Motion for Summary Judgment, at 5.
[58] *Id*.
[59] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).
[60] *Id*. at 1119 (quoting *Comm'r of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465, 87 S. Ct. 1776 (1967)).
[61] *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179 (1940)).
[62] *Badger v. Brooklyn Canal Co.*, 922 P.2d 745, 749 (Utah 1996).

16

how the Utah Supreme Court would rule on that question.[63] The Utah Court of Appeals obliquely

touched on the continuing validity of *Cahoon* when it cited that case for the proposition that while

shares in a corporation are typically deemed personal property, "[a]n exception to the general rule

arises with respect to stock in a mutual irrigation corporation, which has been held to represent an

interest in real property."[64] The Court also finds instructive a case from the United States District

Court for the District of Utah, where that court considered the effect of § 73-1-10(2).[65] The District

Court interpreted that subsection "as simply stating that shares of stock in a water company 'shall

be transferred' using the same procedure applicable to securities, not that shares of stock in a water

company are personal property."[66]

　　While these decisions are persuasive aids in predicting how the Utah Supreme Court would

rule on the issue, they are not dispositive by themselves.[67] Therefore, the Court will also analyze the

relevant statutes to resolve the question of whether the changes made by H.B. 61 require possession

to perfect a security interest in water shares or whether H.B. 61 left the *Cahoon* rule untouched.

　　At the outset, this Court's primary goal in interpreting Utah's statutes "is to evince the true

intent and purpose of the Legislature."[68] The first step is to "interpret the statute according to its plain

language."[69] If the statutory provision proves ambiguous, courts "then seek guidance from the

---

[63] *Johnson*, 305 F.3d at 1118.

[64] *Sachs v. Lesser*, 163 P.3d 662, 674 n.16 (Utah Ct. App. 2007), *rev'd on other grounds*, 207 P.3d 1215 (Utah 2008).

[65] *See Oreo Corp. v. BHV Equity Assocs., LLC*, No. 2:03CV1089 DS, 2004 WL 1114577, at *1 (D. Utah May 12, 2004).

[66] *Id*. (citation omitted).

[67] *Johnson*, 305 F.3d at 1119.

[68] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 267 P.3d 863, 866 (Utah 2011) (quoting *Salt Lake County v. Holliday Water Co.*, 234 P.3d 1105, 1111 (Utah 2010)).

[69] *Wilcox v. CSX Corp.*, 70 P.3d 85, 90 (Utah 2003) (citations omitted).

legislative history and relevant policy considerations."[70] A statute is ambiguous where its "terms remain susceptible to two or more reasonable interpretations" after a court has examined its plain language.[71]

There is a presumption "that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning."[72] In addition, courts must construe each part or section "in connection with every other part or section so as to produce a *harmonious whole*."[73] Therefore, statutory interpretation must "give meaning to all parts" while avoiding making any part superfluous.[74]

While there was substantial argument concerning what the Utah Legislature did and did not do in enacting H.B. 61, and  what it might and should have done to make its intent clearer, "[i]n any matter of statutory construction of any consequence, it will almost always be true that the legislature could have more clearly repudiated one party's preferred construction. But the converse is almost always true as well."[75] A court's inquiry must remain focused on the best evidence of legislative intent—the "plain language of the statute itself."[76]

Here, § 73-1-10(2) provides that Chapter 8 of the Utah Uniform Commercial Code shall govern the transfer of shares of stock in a corporation that evidence the right to the use of water. In addition, § 70A-8-409 states that the procedures of Chapter 8 apply to stock in a water company.

---

[70] *State v. Ostler*, 31 P.3d 528, 529–30 (Utah 2001) (quoting *In re Worthen*, 926 P.2d 853, 866 (Utah 1996)).
[71] *Penunuri v. Sundance Partners, Ltd.*, 301 P.3d 984, 989 (Utah 2013) (quoting *Marion Energy*, 267 P.3d at 866).
[72] *Id*. at 989 (quoting *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 266 P.3d 751, 757 (Utah 2011)).
[73] *Id*.
[74] *Id*.
[75] *In re Estate of Hannifin*, 311 P.3d 1016, 1022 (Utah 2013).
[76] *Reynolds v. Bickel*, 307 P.3d 570, 573 (Utah 2013) (quoting *Marion Energy*, 267 P.3d at 866).

Together, those provisions do not transform water shares from real property to personal property, nor do they require the result that inclusion in a trust deed is no longer a valid method to perfect a security interest in water shares.

Nevertheless, all of the procedures of Chapter 8 apply to water shares, and there may be sections, other than § 70A-8-409, that provide that a security interest in water shares is perfected through possession. The Plaintiff directs the Court to §§ 70A-8-105 and 70A-8-301, two sections of Chapter 8 that deal with delivery and control of securities, and argues that they establish that "perfection of water shares and certificated securities occurs by delivery or control."[77]

The Plaintiff also asserts that § 70A-8-301, as incorporated by § 70A-9a-313, shows that Chapter 8 does include procedures to perfect a security interest in water shares. Section 70A-9a-313 provides that a "secured party may perfect a security interest in certificated securities by taking delivery of the certificated securities under Section 70A-8-301."[78] If water shares were certificated securities, § 70A-9a-313 might be persuasive proof that the Utah Supreme Court would rule that a security interest in water shares can be perfected by possession. But because *Cahoon* held that water shares are not certificated securities, and that holding was not expressly overruled by H.B. 61 or disavowed in subsequent cases, this Court does not find that the Utah Supreme Court would rule that § 70A-9a-313 requires possession to perfect a security interest in water shares.

Based upon the plain language of the statutes, which the Court finds unambiguous, and the relevant cases that have been decided since the enactment of H.B. 61, the Court finds that water shares remain real property under Utah law and a security interest therein may be perfected by the

---

[77] Docket No. 26, Reply in Support of Plaintiff's Motion for Summary Judgment, at 5.
[78] UTAH CODE ANN. § 70A-9a-313(1) (2013). Section 70A-9a-312 also provides that a security interest in investment property, which includes certificated securities, may be perfected by filing. UTAH CODE ANN. §§ 70A-9a-102(49), 312(1) (2013).

shares' inclusion in a recorded deed of trust. Because the Court has not yet determined whether the
Water Shares and Contracts were properly conveyed to the Trust and offered as collateral, however,
the Court cannot at this time make a finding that the Lee and Lowney Trusts properly perfected their
security interests in the Water Shares and Contracts.

## IV.    CONCLUSION

The Court concludes that, as a matter of law, the Debtor did not pledge the Water Shares and
Contracts in his individual capacity, and that the revocable nature of the Trust did not render
insignificant, as that term is used by the Defendants in their memoranda, the Debtor's failure to
specifically convey the Water Shares and Contracts to the Trust, which precluded the Trust from
offering them as collateral. Therefore, on those two issues, the Plaintiff's Motion for Summary
Judgment should be granted, and the Defendants' Motion for Summary Judgment should be denied.

The Court concludes, however, that there are genuine disputes regarding whether the Water
Shares and Contracts were in fact appurtenant to the Pah Tempe property and whether the Debtor
intended to include the Water Shares and Contracts with the Pah Tempe property when he conveyed
it to the Trust. The Plaintiff's Motion for Summary Judgment should be denied on this issue.

Lastly, the Defendants' Motion for Summary Judgment should be granted and the Plaintiff's
Motion for Summary Judgment should be denied on the issue of whether a security interest in water
shares can be perfected by inclusion in a recorded deed of trust. The determination of whether the
Lee and Lowney Trusts properly perfected their security interests in the Water Shares and Contracts
will depend on whether the Water Shares and Contracts were in fact offered as collateral.

A separate Order will be issued in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

20

_____oоo0ooо_____
### SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.


Duane H. Gillman
Patrick E. Johnson
DURHAM JONES & PINEGAR
111 East Broadway, Suite 900
P.O. Box 4050
Salt Lake City, UT 84110-4050
    *Attorneys for Plaintiff*

Chris L. Schmutz
SCHMUTZ & MOHLMAN, LLC
533 West 2600 South #200
Bountiful, UT 84010
    *Attorney for Defendants*